UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**AMY J. FLEMON**                                                                                    **PLAINTIFF**

V.                                      NO. 3:22-CV-133-JTR

**KILOLO KIJAKAZI, Acting Commissioner,**
**Social Security Administration**                                                    **DEFENDANT**

## ORDER

### I.   Introduction

Plaintiff, Amy J. Flemon ("Flemon"), applied for disability benefits on February 4, 2019, alleging disability beginning on January 1, 2016. (Tr. at 14). After conducting a hearing, the Administrative Law Judge ("ALJ") denied Flemon's application in a written decision dated December 30, 2021. (Tr. at 14–24). The Appeals Council denied her request for review on April 18, 2022, making the ALJ's denial of Flemon's application for benefits the final decision of the Commissioner. (Tr. at 1–6).

For the reasons stated below, the Court[1] reverses the ALJ's decision and remands for further review.

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge. *Doc. 5*.

## II. The Commissioner's Decision

The ALJ found that Flemon had not engaged in substantial gainful activity during the period from her alleged onset date of January 1, 2016, though her date last insured of September 30, 2021.[2] 20 C.F.R. § 404.1571 *et seq*; (Tr. at 17). The ALJ found, at Step Two, that Flemon has the following severe impairments: non-epileptic seizure disorder, migraine headaches, hypothyroidism, status-post bilateral meniscal repairs, cervical spine degenerative disc disease, and obesity. (Tr. at 17).

After finding that Flemon's impairments did not meet or equal a listed impairment (Tr. at 17–18),[3] the ALJ determined that Flemon had the residual functional capacity ("RFC") to perform work at the light exertional level, with additional limitations: (1) she cannot climb ladders, ropes, or scaffolds, and is limited to no more than occasional climbing of ramps and stairs; (2) she is limited to no more than occasional stooping, kneeling, crouching, or crawling; (3) she

---

[2] "In order to receive disability insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status." *Pyland v. Apfel*, 149 F.3d 873, 876 (8th Cir. 1998) (citing 42 U.S.C. §§ 416(i), 423(c)).

The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g).

[3] 20 C.F.R. Part 404, Subpt. P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

cannot perform work exposing her to hazards, drive, or operate dangerous machinery; (4) she may not be exposed to unprotected heights in the work place; (5) she cannot tolerate exposure to concentrated vibration and cannot tolerate concentrated exposure to noise; (6) she requires moderate noise level in the workplace; and (7) she cannot perform work duties that require foot control operation. (Tr. at 19).

The ALJ determined that Flemon was unable to perform any past relevant work. (Tr at 22). At Step Five, the ALJ relied upon Vocational Expert ("VE") testimony to find that, based on Flemon's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform, including jobs as marker and motel cleaner. (Tr. at 24–25). Thus, the ALJ concluded that Flemon was not disabled. *Id*.

### III. Discussion

#### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

B. Flemon's Arguments on Appeal

Flemon contends that evidence supporting the ALJ's decision to deny her application for benefits is less than substantial. She argues that: (1) the RFC did not incorporate all of Flemon's limitations; (2) the ALJ erred at Step Five; and (3) the ALJ did not fully evaluate the medical opinion evidence. The Court finds support for Flemon's final argument.

Flemon's main physical problems were caused by seizures and migraines, although she also had degenerative disc disease in her cervical spine and two knee surgeries performed in 2017. She sought out care for her migraines and seizures from three different hospitals, and she took many medications to treat her headaches and seizures.[4] (Tr. at 42–46, 543–650, 1023–42). Most medications did not work that well, and they caused side effects like drowsiness and brain fog. (Tr. at 40–50). At the hearing, Flemon said that she still had 1–2 seizures per week and 1 migraine per day. (Tr. at 40–43). She could no longer drive due to seizures. (Tr. at 310, 1055). Multiple seizure studies depicted active seizures. (Tr. at 548–60, 651–711). She reported in her function report and at the hearing that she needed help from family for virtually all daily activities.[5] (Tr. at 308–15).

The ALJ noted that the Disability Determination Services ("DDS") medical experts reviewed the records and found, in 2019, that Flemon could perform light work with hazard precautions.[6] These opinions issued two years before the end of

---

[4] *See O'Donnell v. Barnhart*, 318 F.3d 811, 815–19 (8th Cir. 2003) (ALJ improperly discredited claimant when he had been persistent in seeking medical treatment, including numerous trips to doctors, many diagnostic tests, use of various pain treatment modalities, and even a trip to the Mayo Clinic).

[5] Inability to perform daily activities may preclude work. *See Draper v. Barnhart*, 425 F.3d 1127, 1131 (8th Cir. 2005).

[6] Social Security Disability applications are initially processed through a network of local Social Security Administration field offices and State agencies (called Disability Determination Services or DDSs).

the relevant time-period, but the ALJ ignored Flemon's request for an updated neurological examination. (Tr. at 35). The ALJ also ignored Flemon's treating physician's statements from November and December 2018: Dr. Brian Day, M.D., Ph.D., and Nurse Practitioner Emily Daniel (who was working under the supervision of Dr. Day), wrote that symptoms of Flemon's seizures included the inability to talk and loss of voice, the inability to breathe, pain in her neck and shoulder, drooping mouth and eyelids; they said that it took her 30 minutes to recover from a seizure. (Tr. at 1037–56). They wrote that seizure triggers included any use of the arms and shoulders (such as cooking), as well as fatigue. *Id*. Flemon's conditions made it hard to sleep. *Id*. Dr. Day proposed that further workups were needed, with a possible neurology referral. *Id*. He said that Flemon would need to avoid operating heavy machinery, working from heights, working around water, or using ladders, and she should avoid cooking over an open flame. (Tr. at 1042). Nurse Daniel wrote that Flemon should not drive for six months, not work alone, and avoid activities that may cause a seizure. (Tr. at 1055).

The ALJ failed to mention Dr. Day or Nurse Daniel by name or discuss their imposed functional restrictions at all. And the ALJ's failure to obtain a supplemental neurological examination runs counter to Dr. Day's recommendation.[7]

---

[7] The ALJ has a duty to develop the record fully, even when the claimant is represented by counsel, and must order a consultative examination if it is necessary to make an informed decision. *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985).

6

When the record contains medical opinions, the ALJ must determine their persuasiveness.[8] When the ALJ discussed the DDS opinions, he said they were persuasive because they were <u>consistent</u> with Flemon's statements that she could manage household chores, shop, prepare meals, and manage finances (Flemon could not do those things without help). (Tr. at 22). In fact, the DDS written opinions stated, instead, that "[as far as daily activities go], seizures limit her ability to work, and she has issues with handling personal care." (Tr. at 84–100). Again, Flemon indicated that her family helped with most activities. So the ALJ flat-out mischaracterized the DDS opinions concerning daily activities.[9]

Because the ALJ mishandled the DDS opinion evidence, failed to mention Dr. Day's imposed functional restrictions, and did not obtain a supplemental neurological evaluation, reversal is warranted.

---

[8] On January 28, 2017, the Administration promulgated new regulations governing how ALJs assess medical opinion evidence. The new rules, with an effective date of March 27, 2017, focus on whether an opinion is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant [which includes: (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship]; (4) provider specialization; and (5) any other important factors. *See* 20 C.F.R. § 404, 1520c(a)–(c) (2017). An opinion is more persuasive if it is consistent with and supported by the medical evidence as a whole. 20 C.F.R. § 416.920c(c)(1)–(2) (2017*)*; *Bonnett v Kijakazi*, 859 Fed. Appx. 19, 20 (8th Cir. 2021) (per curiam); *Phillips v. Saul*, No. 1:19-CV-34-BD, 2020 WL 3451519, *2 (E.D. Ark. June 24, 2020). An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Id*. Consistency and supportability of the medical opinion are the two most important factors. *Id*.

[9] The ALJ failed to even mention the supportability prong in his evaluation of the DDS opinions. (Tr. at 22). The Eighth Circuit has found that failure to address both consistency and supportability when evaluating medical opinions is grounds for reversal, especially when the record shows that a claimant has significant functional limitations. *Bonnett,* supra.

## IV.   Conclusion

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477. The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing. The Court finds that the ALJ's decision is not supported by substantial evidence, because the ALJ erred in his evaluation of opinion evidence.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is REVERSED and the case is REMANDED for further review.

DATED this 10th day of August, 2023.

_____
UNITED STATES MAGISTRATE JUDGE